JOSEPH & KIRSCHENBAUM LLP
D. Maimon Kirschenbaum
Josef Nussbaum
32 Broadway, Suite 601
New York, New York 10004
Tel: (212) 688-5640
Fax: (212) 688-2548

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRIS CALDERON, NICK PATSONIKOLIS, and AMRESH BOODOO, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>DISH NETWORK CORP. d/b/a DISH NETWORK and ECHOSPHERE L.L.C. d/b/a DISH NETWORK,<br><br>          Defendants. | No.:<br><br>CLASS ACTION<br>COMPLAINT |

Chris Calderon, Nick Patsonikolis and Amresh Boodoo ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, alleges as follows:

**NATURE OF THE ACTION**

1.      This lawsuit seeks to recover untimely wage compensation for Plaintiffs and similarly situated installation technicians (collectively, "Manual Workers") who work or have worked as manual workers for Dish Network Corp. d/b/a Dish Network and Echosphere L.L.C. d/b/a Dish Network in New York State (collectively "Defendants").

2.      Headquartered in the State of Colorado, Defendant Dish Network Corp. operates a company that provides television services and direct-broadcast satellite services to customers throughout the United States including in New York State.

3.      Upon information and belief, Defendant Echosphere L.L.C. is a wholly owned subsidiary of Dish Network Corp. via a series of other entities that are wholly owned by Dish Network Corp.

4.      Upon information and belief, Defendants employ over 300 people in New York State, a majority of whom are Manual Workers.

5.      At all relevant times, Defendants have compensated Plaintiffs and all other Manual Workers on a bi-weekly basis.

6.      Despite Plaintiffs and other Manual Workers spending more than 25% of their workdays engaged in physical tasks, Defendants failed to properly pay these employees their wages within seven calendar days after the end of the week in which these wages were earned.

7.      In this regard, Defendants have failed to provide timely wages to, and have taken unlawful deductions from the wages of, Plaintiffs and all other similar Manual Workers.

8.      Plaintiff brings this action on behalf of themselves and all other similar Manual Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to remedy violations of the New York Labor Law ("NYLL"), Article 6, §§ 191, 198.

9.      Plaintiffs Calderon and Patsonikolis also bring this lawsuit to redress Defendants terminating them in retaliation for complaining on multiple occasions about Defendants' lax safety standards that put Plaintiffs' and other installation technicians' safety in jeopardy.

10.     Finally, Plaintiff Patsonikolis brings this lawsuit to redress Defendants terminating him in retaliation for calling in sick with COVID-19 symptoms.

## THE PARTIES

**Plaintiffs**

11.     Chris Calderon ("Calderon") is an adult individual who is a resident of the State of New York.

12.     Calderon was employed by Defendants as a Level 3 Installation Technician from approximately 2010 until approximately August 2022.

13.     Nick Patsonikolis ("Patsonikolis") is an adult individual who is a resident of the State of New York.

14.     Patsonikolis was employed by Defendants as a Level 4 Installation Technician from approximately October 2011 until approximately August 2022.

15.     Amresh Boodoo ("Boodoo") is an adult individual who is a resident of the State of New York.

16.     Boodoo was employed by Defendants as a Level 1 Installation Technician from approximately February 2019 until August 2022.

17.     Calderon, Patsonikolis and Boodoo are covered employees within the meaning of the NYLL.

**Defendants**

18.     Dish Network Corp. is a foreign business corporation organized and existing under the laws of Nevada and having its principal place of business in Englewood, CO.

19.     Dish Network Corp.'s principal executive office is located at 9601 S Meridian Blvd. Englewood, CO 80112.

20.     Upon information and belief, Dish Network Corp owns 100% of Echosphere L.L.C.

21. Dish Network Corp. and Echosphere L.L.C. were and are covered employers within the meaning of the NYLL, and at all times relevant, jointly employed Plaintiffs and similar employees.

22. Specifically, Defendants jointly maintained control, oversight, and direction over Plaintiffs and similar employees, including employees' timekeeping, payroll, and other employment practices that applied to them.

23. Defendants applies the same employment policies, practices, and procedures to all installation technicians in its operation in New York State, including policies, practices, and procedures with respect to payment of wages.

## JURISDICTION AND VENUE

24. This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs.

25. The great majority, if not all, members of the proposed class are citizens of states different from that of Defendants.

26. There are over 100 members in the proposed Subclasses.

27. Defendants are subject to personal jurisdiction in New York.

28. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conducts business in this District.

## NEW YORK CLASS ACTION ALLEGATIONS

29. Plaintiffs bring the First Cause of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

A. All persons who work or have worked as installation technicians for Dish Network Corp. and/or Echosphere L.L.C. in New York State between September 23, 2016 and the date of final judgment in this matter. (The "Class.")

30.     The members of the Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

31.     There are more than one hundred members in the Class.

32.     Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class ("Class Members"), and the relief sought is typical of the relief which would be sought by each member of the Class in separate actions.

33.     Plaintiffs and the Subclass Members have all been injured in that they have been compensated in an untimely manner due to Defendants' common policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices affected everyone in the Subclasses similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each member of the Class.

34.     Plaintiffs are able to fairly and adequately protect the interests of the Class, and have no interests antagonistic to the Class.

35.     Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

36.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendant. Class action treatment will permit a large number of similar persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

37.     Common questions of law and fact exist as to the Class that predominate over any questions only affecting Plaintiffs and/or each member of the Subclasses individually and include, but are not limited to, whether Defendants compensated Plaintiffs and the Class Members on a timely basis.

## PLAINTIFFS' FACTUAL ALLEGATIONS

**Late Payment of Wages**

38.     Consistent with its policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

39.     Plaintiff Calderon was employed by Defendants as an installation technician from approximately 2010 until August 2022.

40.     Plaintiff Patsonikolis was employed by Defendants as an installation technician from approximately 2011 until August 2022.

41.     Defendants provide television and satellite services to private and retail Dish Network customers  throughout New York State.

42.     Defendants hired installation technicians to install Dish Network products to its customers.

43.     Installation technicians' entire responsibilities are limited to installing Dish Network products, relocating equipment, and conducting site surveys.

44.     During the time Plaintiffs worked for Dish Network, they serviced approximately 4-6 different Dish network customers each workday.

45.     During the entirety of the time Plaintiffs were employed by Defendants, over twenty-five percent of their duties were physical tasks, including but not limited to: (1) unloading goods from trucks; (2) loading goods onto hand trucks to deliver to retail customers; (3) physically delivering the goods to customers; (4) installing equipment for customers, including climbing ladders to access customers' roofs; (5) conducting site surveys; (6) inspecting customers' equipment including, for example, HVAC equipment and door lock installations; (7) filling up the non-electric vehicles with fuel; and (8) driving for long periods of time.

46.     In fact, in a current ad for an installation technician position in New York State, Dish Networks web site eliminates any doubt as to whether this position involves manual labor.

47.     The ad first introduces the position by stating : Do you like being active and working hands-on with the latest cutting-edge technology?[1]

48.     The ad continues: What will you be doing? […]

- Install and manage customer products, while creating opportunities to sell them on new personalized technology
- Work autonomously to upsell and offer smart home solutions to customers on a daily basis
- Relocate power and place mounts, satellite dishes, televisions, routers, cameras, receivers and whole-home connectivity technology in customer homes
- Conduct site surveys and in-person home assessments.[2]

49.     The ad concludes: *All technicians must have:*

- Ability to work in-person in multiple homes per day (this is not a work-from-home position; you will be in the field servicing customers' homes)
- Ability to stand for long periods of time on ladders, lift over 70 lbs. at times, crawl into small spaces, work in all climates and remain within the individual weight requirement of 335 lbs
- Valid driver's license in the state you are seeking employment in, with a driving record that meets DISH's minimum safety standard.[3]

---

[1] *See* https://jobs.dish.com/jobs/66750?lang=en-us (accessed on September 20, 2022).
[2] *Id*.
[3] *Id*.

50.     Despite regularly spending more than twenty-five percent of their shifts performing these physical tasks, Plaintiffs were compensated by Defendants on a bi-weekly basis.

51.     Thus, for every other workweek, Defendants failed to pay Plaintiffs their wages earned within seven days of the end of the workweek, as required by NYLL § 191(1)(a).

52.     Every time that Defendant failed to pay Plaintiffs their wages earned within seven days of the end of the workweek, Defendant deprived him of the use of money that belonged to him.  As a result, Plaintiffs were unable to do those things that every person does with their money, such as paying bills or buying goods that he needed or wanted to buy.  Moreover, by retaining money that belonged to Plaintiffs, Plaintiffs lost the time value of money.

53.     For example, for the period beginning on August 6, 2022, and ending August 19, 2022, Plaintiff Patsonikolis was paid his lawfully earned wages on August 26, 2022 *See* Exhibit A, Patsonikolis Paystub.

54.     In this regard, Defendant failed to pay Patsonikolis his wages earned from August 6, 2022 to August 12, 2022, by August 19, 2022, as required by NYLL § 191(1)(a).

**Plaintiffs' Unlawful Termination**

55.     Plaintiffs Calderon and Patsonikolis both worked for Defendants for more than a decade.

56.     Defendants provided installation technicians with company vans to use during their shifts.

57.     Technicians were provided with different vans every day.

58.     A large percentage of the vans Defendants' provided Plaintiffs for work were unsafe.

59.    For example, many of the vans had issues with torn windshield wipers and broken side mirrors (resulting in poor visibility), tires with low tread, and low coolant (causing vans to overheat and break down in the field, etc.).

60.    Moreover, a large percentage of Defendants' vans had defective or inoperable emergency braking system.

61.    Satellite technicians are legally mandated to inspect their vehicles and equipment to ensure that they comply with safety standards.

62.    Defendants almost never provided Calderon and Patsonikolis with sufficient time to inspect the safety of their vans at the beginning of their shifts.

63.    On many occasions, Calderon and Patsonikolis complained to their supervisors that there was insufficient time to do these requisite van safety checks and that, as a result, someone could get injured.

64.    On some occasions Calderon's and Patsonikolis's supervisors forced them and other technicians to lie on the van inspection forms and write that everything was satisfactory with the vehicles even though the vehicle would have failed inspection if the form were to be filled out accurately.

65.    Neither Plaintiffs' supervisors nor any Defendants other employees ever did anything to try and rectify this situation.

66.    On August 24, 2022, Patsonikolis filed a routine "illness report" with Defendants as a result of him coming down with COVID-19-like symptoms.

67.    The very next day, August 25, 2022, Defendants terminated Patsonikolis.

68.    On August 24, 2022, Defendants also terminated Plaintiff Calderon as a proximate cause of his complaints about the safety of Defendants' vans.

<u>FIRST CAUSE OF ACTION</u>
New York Labor Law – Failure to Pay Timely Wages
(Brought on behalf of Plaintiff and the Class)

69.     Plaintiffs realleges and incorporate by reference all allegations in all preceding paragraphs.

70.     The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protects Plaintiffs and the Class Members.

71.     Defendant failed to pay Plaintiff and Class Members on a timely basis as required by NYLL § 191(1)(a).

72.     Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants the amount of their untimely paid wages as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

<u>SECOND CAUSE OF ACTION</u>
FMLA Interference In Violation Of 29 U.S.C. § 2612, et seq.
(Brought on behalf of Plaintiff Patsonikolis)

73.     Plaintiff Patsonikolis realleges and incorporate by reference all allegations in all preceding paragraphs.

74.     On August 24,  2022 Plaintiff applied or sick leave.

75.     The very next day, and in direct retaliation for this request, Defendants terminated Plaintiff's employment with the company in violation of the FMLA's anti-retaliation provisions.

76.     Defendants' unlawful conduct was not in good faith and Defendants did not have reasonable grounds for believing its actions were in conformance with the FMLA.

77.     As a result of Defendants' unlawful conduct, as aforesaid, Patsonikolis has suffered damages, including lost past and future income, and has incurred or will incur attorneys' fees and costs in securing his rights through this Action.

<u>THIRD CAUSE OF ACTION</u>
New York Labor Law – Whistleblower Retaliation, N.Y. Lab. L. § 740
(Brought on behalf of Plaintiffs Calderon and Patsonikolis)

78.     Plaintiffs Calderon and Patsonikolis reallege and incorporate by reference all allegations in all preceding paragraphs.

79.     NYLL § 740 prohibits private sector employers from discharging, suspending, demoting, or otherwise retaliating against an employee because the employee takes certain actions in relation to certain unlawful activity, policy, or practice by an employer.

80.     Plaintiffs Calderon and Patsonikolis complained on numerous occasions about the safety of Defendants' vans.

81.     As a result of these complaints, Defendants terminated Calderon and Patsonikolis.

82.     Defendants' unlawful conduct was not in good faith and Defendants did not have reasonable grounds for believing its actions were in conformance with the NYLL.

**83.**     As a result of Defendants' unlawful conduct, as aforesaid, Calderon and Patsonikolis have suffered damages, including lost past and future income, and have incurred or will incur attorneys' fees and costs in securing his rights through this Action.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.      Designation of Plaintiffs as representatives of the NY Rule 23 Class and counsel
        of record as Class Counsel;

C.      Liquidated damages permitted by law pursuant to the NYLL;

D.      Front-pay;

E.      Backpay;

F.      Prejudgment and post-judgment interest;

G.      Reasonable attorneys' fees and costs of the action; and

H.      Such other relief as this Court shall deem just and proper.


Dated: New York, New York            Respectfully submitted,
       September 23, 2022            JOSEPH & KIRSCHENBAUM LLP

                                     By:  /s/ *D. Maimon Kirschenbaum*____
                                          D. Maimon Kirschenbaum
                                          Josef Nussbaum
                                          32 Broadway, Suite 601
                                          New York, NY 10004
                                          Tel: (212) 688-5640
                                          Fax: (212) 688-2548